**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| JS IP LLC, | |
| *Plaintiff,* | |
| vs. | Civil Action No. _____ |
| OM SAI RAM IX LLC d/b/a SOCIAL LIV, | |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff JS IP LLC ("JS IP" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant OM Sai Ram IX LLC d/b/a Social LIV ("Social LIV" or "Defendant"). In support, Plaintiff states as follows:

## INTRODUCTION

1.    This is a civil action by Plaintiff against Defendant seeking injunctive relief, Defendant's profits, compensatory damages, statutory damages, and costs and attorneys' fees of this action, among other relief, for Defendant's acts of willful trademark infringement, unfair competition, and injury to business reputation — all of which violate federal and common law. 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(d).

2.    Plaintiff brings this action due to Defendant's continued and willful disregard for Plaintiff's federally-registered **LIV**® Trademarks (as later defined), Defendant's use of social media handles and a domain name identical to and/or confusingly similar to the **LIV**® Trademarks, and/or Defendant's use, directly and/or indirectly in concert with others, of the **LIV**® Trademarks and domain names including the word "LIV," in connection with the advertising,

1

promotion, offer for sale, and sale of competing and/or related goods/services. Defendant's infringement creates consumer confusion and creates a false association between Plaintiff and Defendant.

3.    As set forth below, Defendant's acts constitute federal trademark infringement, unfair competition, and injury to business reputation, all in violation of 15 U.S.C. §§ 1114, 1125(a), 1125(d). In addition, Defendant's acts constitute trademark infringement and unfair competition under Texas common law.

## JURISDICTION AND VENUE

4.    This is a civil action for injunctive and other relief pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d) for trademark infringement, unfair competition, and injury to business reputation. Plaintiff also asserts claims in accordance with common law rights for trademark infringement and unfair competition.

5.    This Court has original federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. This Court has supplemental subject matter jurisdiction over Plaintiff's remaining common law claims under 28 U.S.C. § 1367.

6.    This Court has personal jurisdiction over Defendant because Defendant is a Texas limited liability company with a principal place of business in Texas and in this judicial district. Moreover, Plaintiff's claims arise out of or relate to Defendant's activities in this judicial district, namely willful trademark infringement, unfair competition, and injury to business reputation. Exercising jurisdiction in this judicial district would not offend traditional notions of fair play and substantial justice.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant operates and does significant business in this judicial district, and because a

substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

8.    Plaintiff has engaged undersigned counsel and has agreed to pay undersigned counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing Plaintiff's intellectual property rights.

## THE PARTIES

9.    Plaintiff JS IP LLC ("Plaintiff" or "JS IP") is a Delaware limited liability company with a principal place of business of 19950 West Country Club Drive, 10th Floor, Aventura, Florida 33180.

10.    Defendant OM Sai Ram IX LLC d/b/a Social LIV is a Texas limited liability company with a principal place of business of 2502 Lavaca Drive, Euless, Texas 76039.

11.    Defendant operates a bar and nightclub establishment using the name SOCIAL LIV, located at 3005 Bledsoe Street, Fort Worth, Texas 76107.

12.    Defendant uses the domain name socialliv.com and uses and/or has used a variety of LIV-formative trademarks and logos including, without limitation, the marks SOCIAL LIV, LIV and LIV ON SUNDAY (individually or collectively, the "SOCIAL LIV Names"), to advertise, promote, offer for sale, and/or sell nightlife, bar, and/or dining services of others.

## FACTS APPLICABLE TO ALL CLAIMS

A.    **The LIV® Trademarks**.

13.    Plaintiff is the exclusive owner of the mark **LIV®** in connection with a variety of goods and services including bar, nightclub, and entertainment services. Plaintiff licenses the **LIV®** mark in connection with the management and operation of the **LIV®** nightclubs.

14.    Plaintiff and its licensees have continuously used the **LIV®** mark in commerce in connection with their services since as early as 2008.

15.    Fontainebleau Florida Hotel, LLC ("FBFH") and Bowtie Hospitality LV LLC ("Bowtie") (collectively, the "Related Companies") own and operate two of the most famous and high-profile nightclubs in the world, located in Miami Beach, Florida and Las Vegas, Nevada, which prominently use and display one or more of the federally registered **LIV®** trademarks and other common law trademarks, domain names, and/or social media handles consisting of the **LIV®** trademark (individually or collectively, the **LIV®** Trademarks").

16.    Plaintiff has entered into non-exclusive licensing agreements with FBFH and Bowtie authorizing their use of the **LIV®** Trademarks.

17.    The **LIV®** nightclub, bar, and entertainment services are advertised and promoted throughout the world through print advertisements, the Internet, social media, and billboard advertising.

18.    Plaintiff's goods/services have been highly publicized in connection with the **LIV®** Trademarks and by virtue of its promotion, advertising, and continuous use, Plaintiff has acquired notoriety, and a valuable reputation connected with the **LIV®** brand.

19.    Plaintiff is the owner of the following federal trademark registrations for its **LIV®** Trademarks (individually and collectively referred to herein as the "**LIV®** Registrations"):

| **Filing Date** | **Trademark** | **Registration No.** | **Goods/Services** | **Incontestable Status** |
|---|---|---|---|---|
| May 22, 2008 | **LIV** | 3976284 | 041: Night clubs; | Incontestable |
| May 22, 2008 | **LIV** | 4284279 | 043: Bar services; cocktail lounges; | Incontestable |

| March 19, 2012 | **LIV** | 4623139 | 018: Bags, namely, tote bags;<br><br>025: * Affinity * clothing, namely, shirts and t-shirts, * excluding apparel designed for cycling, all sold through branded shops and websites associated with LIV-branded nightclubs and associated music entertainment events * | No |
| February 17, 2014 | **LIV** | 4890033 | 041: Producing and arranging concerts, festivals, and nightclub performances in the field of music; providing online information regarding musical performances, musical performers, nightclub performances, and musical events | Incontestable |
| June 15, 2016 | **LIV ON SUNDAY** | 5136809 | 041: Entertainment services, namely, conducting parties; night club services; nights-clubs;<br>043: Bar services; cocktail lounge services; cocktail lounges; | Incontestable |
| October 7, 2016 | LIV | 5208689 | 041: Night club services; Nights-clubs; Arranging and conducting nightclub parties; Entertainment services, namely, conducting parties.<br>043: Cocktail lounges; Night club reservation services, namely, arranging for cocktails and table service reservations at night clubs and night club events; Bar and cocktail lounge services. | Incontestable |
| Feb. 23, 2018 | LIV | 6592598 | 018: Bags, namely, make-up bags sold empty and tote bags | No |
| Feb. 23, 2018 | LIV | 6982685 | 021: Shot glasses;<br>025: Affinity clothing, namely, shirts, tank tops, muscle tank tops, shorts, v-neck shirts, sweatshirts, hoodies, and hats, all excluding children's apparel and apparel designed for cycling, and all sold through branded shops and websites associated with LIV-branded nightclubs and associated music entertainment events | No |

20.    True and accurate copies of the **LIV®** Registrations are attached hereto as **Composite Exhibit 1**. Each of the **LIV®** Registrations is valid, subsisting, and in full force and effect and therefore, confers a nationwide right of exclusive use of the trademark in connection with the goods/services applied for in the registrations pursuant to 15 U.S.C. § 1057(c).

21.    Five of the **LIV®** Registrations are incontestable and thereby constitute conclusive evidence of Plaintiff's ownership and its exclusive right to use the marks for the goods/services recited in the registrations, in accordance with 15 U.S.C. § 1065.  In addition, the registrations are proof of the inherent distinctiveness of the **LIV®** Trademarks.

**B.    The LIV® Trademark's Goodwill and Plaintiff's Established Reputation.**

22.    The original **LIV®** nightclub is in the prestigious and historically significant FONTAINEBLEAU® Miami Beach hotel, which remains one of the most lavish hotels in Miami Beach. In approximately 2005, the hotel commenced a $1 billion renovation.  The renovation was completed in or about 2008 and the FONTAINBLEAU® hotel opened **LIV®** nightclub as part of its grand re-opening. This **LIV®** nightclub located in Miami Beach shall be referred to herein as "**LIV®** Miami".

23.    In December 2023, the **LIV®** brand opened **LIV®** Las Vegas in the FONTAINEBLEAU® Resort and Casino in Las Vegas, Nevada. This significant expansion of the **LIV®** brand increased consumer recognition of the **LIV®** Trademarks. This **LIV®** nightclub located in Las Vegas shall be referred to herein as "**LIV®** Vegas."

24.    The **LIV®** nightclubs deliver the ultimate nightlife experience, providing a playground for celebrities, and featuring live performances from established and up and coming DJs and musical performers.

25.     **LIV®** Miami has over 18,000 square feet of space, multiple bars for cocktail service, VIP areas, skyboxes, and 400 LED panels to produce lights that move in sync with the pulsating dance music. **LIV®** Vegas provides customers with a VIP experience, with banquette areas, private skyboxes, state-of-the-art sound and lighting systems, and other amenities. Both nightclubs regularly host events with musical performers.

26.     Plaintiff, by and through its Related Companies, use the social media handles @LIVMIAMI and @LIVLV for their Instagram® pages, and @LIVMIAMI and @LIVNIGHTCLUBLV for their X® accounts. The @LIVMIAMI Instagram® page has over 540,000 followers while the @LIVMIAMI X® page has over 69,000 followers. The @LIVLV Instagram® page has over 70,000 followers. The TikTok® profile for @livmiami has over 28,000 followers and 1 million likes. Plaintiff registered its domain name [www.LIVNIGHTCLUB.com](www.LIVNIGHTCLUB.com) on April 25, 2008.

27.     Plaintiff, by and through its Related Companies, also uses the LIV Miami and LIV Las Vegas pages on Facebook®, which have a combined following of over 209,000 users.

28.     The **LIV®** brand has achieved fame and is synonymous with luxury entertainment. It is a popular nightlife destination with locals and visitors from around the world and has received a great number of positive reviews on various online websites like Yelp.com and Tripadvisor.com. Due to the substantial success of these nightclubs, the **LIV®** Trademarks have received extensive unsolicited publicity and media coverage. The result of the successful **LIV®** brand has extended beyond its locations in Miami Beach, Florida and Las Vegas, Nevada to other cities in the U.S. and around the world.

29.     Plaintiff, by and through its Related Companies, spends approximately $12 million annually on advertising and promotion of the **LIV®** Trademark. The **LIV®** nightclubs generate

tens of millions of dollars in revenue annually. As a result of the volume of sales of the goods/services associated with the **LIV®** Trademarks, the extensive advertising and promotion of the **LIV®** services, and the unsolicited media coverage of the **LIV®** Trademarks, the **LIV®** Trademarks have acquired enormous value and have become distinctive and well-known to the consuming public and the trade as identifying and distinguishing Plaintiff's goods/services.

30.    Plaintiff's registered rights in its **LIV®** Trademarks were established long before any date on which Defendant may rely.

31.    Plaintiff has actively and consistently policed its **LIV®** Trademarks, by demanding third-party unauthorized users of similar marks cease and desist such use, and by pursuing legal remedies when necessary. Plaintiff has had success in enforcing its **LIV®** Trademarks against third parties.

32.    Owing to the distinctiveness of the **LIV®** Trademarks, many third parties do not even attempt to misuse the **LIV®** Trademarks; and if they do, once they learn of and/or are given notice of Plaintiff's rights, they stop their infringing uses.

33.    Since long prior to the acts and misuse of Defendant complained of herein, Plaintiff and/or its Related Companies, affiliates, licensees, and predecessors have expended much money, time, and effort in advertising, promoting, and marketing the goods and services offered under the **LIV®** Trademarks. As a result, **LIV®** is globally recognized as one of the premier brands in the entertainment and nightlife industry.

**C.**    <u>**Social LIV's Business**</u>.

34.    Social LIV uses the SOCIAL LIV Names to promote itself as a bar and nightclub that operates in the Fort Worth, Texas area at 3005 Bledsoe Street, Fort Worth, Texas 76107.

35.    Upon information and belief, Social LIV opened its doors on April 4, 2025.

36.      Social LIV uses the SOCIAL LIV Names to advertise that it provides "live music, DJ nights, and event-hosting, making it a go-to nightlife spot."[1] It also offers "VIP Experiences," providing "VIP seating options and bottle service for an elevated experience."[2]

37.      Social LIV regularly posts advertisements using the SOCIAL LIV Names on its social media pages for artist performances, special events, and weekly discounts. Social LIV operates an Instagram page (@sociallivvfw), Facebook page (@Socialliv FW), and TikTok page (@sociallivfw) (the "Social Media Handles").

**D.      <u>Defendant Infringes on the LIV® Trademarks</u>**.

38.      Since its opening, Social LIV has been infringing on the **LIV**® Trademarks through the use of its SOCIAL LIV names, Social Media Handles, and related websites, social media accounts, and advertisements.

39.      Social LIV uses the domain name https://socialliv.com/ to advertise a website where it promotes and advertises its services (the "Domain Name").



---

[1] https://socialliv.com/

[2] *Id.*

40.    Social LIV's logo ("Infringing Logo") looks confusingly similar to the **LIV**® Trademarks. The following images depicts the Infringing Logo, which has been posted on various internet platforms. It is clear that the word "LIV" is the dominant feature of the mark with "SOCIAL" being barely visible as it is superimposed on the mark.



41.    On May 1, 2025 <u>Defendant filed a U.S. Trademark Application</u> for the mark "LIV SOCIAL" in connection with night clubs and arranging and conducting nightclub parties.



42.    The United States Patent and Trademark Office ("USPTO") issued a non-final office action dated September 25, 2025, indicating that it was refusing to register the LIV SOCIAL mark because of a likelihood of confusion with the **LIV**® Trademarks. *See* **Exhibit A**.

43.     Moreover, Defendant's Social Media Handles all contain some iteration of the word LIV and the Infringing Logo, which causes confusion amongst consumers and creates a false association with the **LIV®** brand.

44.     In addition, Social LIV has repeatedly put out advertisements for its events and services that infringe on the **LIV®** Trademarks (the "Social Media Content"). For example, in May 2025, Social LIV hosted an event titled "LIV ON SUNDAYS," which directly infringes on the LIV ON SUNDAY® trademark.



E.     <u>There is a Likelihood of Confusion Between the SOCIAL LIV Names and the LIV® Trademarks</u>.

45.     Defendant's use of the confusingly similar SOCIAL LIV Names, Social LIV Domain Name, Social Media Handles, Social Media Content, and Infringing Logo identify competing services that create confusion and deception as to the source or origin of Defendant's (and/or its affiliates' or business partners') goods/services. Through this use, Defendant is unfairly trading on the valuable reputation and goodwill embodied in the **LIV®** Trademarks.

46.     The sight, sound, and overall commercial impression conveyed by SOCIAL LIV Names, Defendant's Domain Name, Social Media Handles, Social Media Content, and Infringing Logo are confusingly similar to the **LIV®** Trademarks.

47.     The goods/services being offered at the website appearing at Social Liv's Domain Name and Social Media Handles are identical to the goods/services being offered in connection with the **LIV®** Trademarks – nightlife and nightclub services.

48.     The trade channels, prospective customers and actual customers of Plaintiff and Defendant are similar due to the overlapping nature of the goods/services, and the fact that the parties are offering goods/services relating to the entertainment and nightlife industry.

49.     Defendant's use of the SOCIAL LIV Names, Domain Name, Social Media Handles, and corresponding trademarks is likely to cause consumers to mistakenly believe that Defendant's (and/or its affiliates' or business partners') goods/services are approved, endorsed, sponsored, or affiliated by Plaintiff, or that Plaintiff is a source of Defendant's (and/or its affiliates' or business partners') goods/services, or that those goods/services are in some other way associated with Plaintiff, all to Plaintiff's injury and harm.

50.     Plaintiff has not granted any right, assignment, or license to use its **LIV®** Trademarks to Defendant (and/or its affiliates or business partners) for any purpose whatsoever.

51.     Defendant's conduct not only infringes the **LIV®** Trademarks; it trades upon Plaintiff's goodwill and reputation; dilutes the distinctiveness of the **LIV®** Trademarks; causes a likelihood of confusion; and unfairly competes with Plaintiff.

52.     Defendant's conduct has damaged, and continues to damage, Plaintiff. To the extent that Defendant's (and/or its affiliates' or business partners') goods/services are offered

improperly in connection with the **LIV®** Trademarks, and do not conform to Plaintiff's quality standards, such non-conformity has injured or is likely to injure Plaintiff's reputation and goodwill.

53.     Prior to filing the instant lawsuit, Plaintiff sent several letters to Defendant providing it with an opportunity to cease and desist its infringement on the **LIV®** Trademarks in an effort to amicably resolve the dispute and avoid the inevitable consumer confusion resulting from Defendant's use.

54.     Instead of ceasing and desisting, Defendant deleted certain social media posts, slightly altered its logo, and claimed to comply with Plaintiff's demands. Not only did Defendant's purported changes fail to cure the infringement, but just days later, it published new posts that continued to violate the **LIV®** Trademarks.

55.     On June 5, 2025, Defendant represented that it was under new management. In response, Plaintiff issued an additional cease-and-desist letter directed to Social LIV in an effort to engage the new leadership, but the letter was ignored, forcing Plaintiff to file this suit to protect its rights.

## COUNT 1: LIKELIHOOD OF CONFUSION WITH LIV® TRADEMARKS
## (15 U.S.C. § 1114)

56.     Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

57.     This claim is brought under 15 U.S.C. § 1114.

58.     Plaintiff has continuously and extensively used the **LIV®** Trademarks since as early as 2008 and has not abandoned the marks.

59.     Plaintiff's use and registration of the **LIV®** Trademarks in the United States for its goods/services predates any use of Defendant's Domain Name, Infringing Logo, Social Media Handles, and Social Media Content.

60.    Defendant's control and use of the SOCIAL LIV Names, Domain Name, Social Media Handles, Social Media Content, and corresponding trademarks are likely to cause confusion, mistake, or deception with regard to the origin of said goods/services and to confuse, mislead, and deceive members of the public into believing that Plaintiff has allowed, sponsored, approved, or licensed Defendant (and/or its affiliates or business partners) to provide its competing goods/services, or in some way Defendant (and/or its affiliates or business partners) are connected to or affiliated with Plaintiff, when they are not.

61.    Any such confusion would result in injury or have a direct impact on Plaintiff's reputation and its ability to market its own goods/services under the **LIV®** Trademarks. Furthermore, any defect, objection, or fault found with Defendant's (and/or its affiliates' or business partners') goods/services would negatively impact and seriously injure the reputation Plaintiff has established for the goods/services it sells under the **LIV®** trademarks.

62.    Upon information and belief, the aforementioned acts and conduct were carried out by Defendant willfully and with the intent and purpose of appropriating and trading upon the goodwill and reputation of Plaintiff and the **LIV®** Trademarks and to pass off its goods/services as Plaintiff's goods/services.

63.    Defendant's control and use of its SOCIAL LIV Names, Domain Name, Infringing Logo, Social Media Handles, and Social Media Content was without Plaintiff's permission, license, or consent. Defendant is not connected with Plaintiff or the **LIV®** trademarks.

64.    Plaintiff has objected to Defendant's use of the SOCIAL LIV Names, Domain Name, Infringing Logo, Social Media Handles, and Social Media Content, and Defendant has intentionally ignored such demands, intending to trade on the goodwill associated with the **LIV®** trademarks.

65. Defendant's acts constitute willful and deliberate infringement of the federally registered **LIV®** Trademarks in violation of 15 U.S.C. § 1114.

66. Defendant's willful and callous misconduct makes this an exceptional case, entitling Plaintiff to have any monetary remedies increased, up to three times such amount, and to recover its attorneys' fees under 15 U.S.C. § 1117.

67. By reason of Defendant's acts alleged herein, Plaintiff has suffered and, unless Defendant's conduct is restrained, will continue to suffer serious and irreparable harm for which there is no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief against Defendant and after trial, to recover any damages proven to have been caused, or any profits of Defendant that have been earned unjustly, by reason of Defendant's acts of infringement.

## COUNT 2: FALSE SUGGESTION OR CONNECTION AND UNFAIR COMPETITION WITH THE LIV® TRADEMARKS AGAINST DEFENDANT (15 U.S.C. § 1125(a))

68. Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

69. This claim is brought under 15 U.S.C. 1125(a).

70. The **LIV®** Trademarks are valid and enforceable, and several of the **LIV®** Registrations are incontestable.

71. Defendant's unauthorized use of the **LIV®** Trademarks in its trade names, trademarks, corporate names, SOCIAL LIV Names, Social Media Handles, Social Media Content, Infringing Logo, and Domain Name unfairly competes with Plaintiff and falsely represents to the public that the goods/services advertised, sold, or offered for sale by Defendant (and/or its affiliates or business partners) emanate from the same source or origin of Plaintiff's goods/services, or that

Plaintiff authorizes, endorses, sponsors, or otherwise approves those goods/services, when Plaintiff does not.

72.     Defendant, with knowledge of such falsity, directly and/or indirectly, offered or caused to be offered, advertised, and sold goods/services in connection with trademarks, trade names, SOCIAL LIV Names, Social Media Handles, Social Media Content, its Infringing Logo, and its Domain Name that are confusingly similar to the **LIV®** Trademarks.

73.     Defendant's use of its SOCIAL LIV Names, Domain Name, Social Media Handles, Social Media Content, and Infringing Logo is without Plaintiff's permission, license, or consent. Defendant is not connected with Plaintiff or the **LIV®** Trademarks. Plaintiff has objected to Defendant's use of the Defendant's SOCIAL LIV Names, Domain Name, Social Media Handles, Infringing Logo, and corresponding trademarks, and Defendant intentionally ignored such demands, intending to trade on the goodwill associated with the **LIV®** Trademarks.

74.     Defendant's acts constitute false suggestion or connection or unfair competition with the **LIV®** Trademarks in violation of 15 U.S.C. § 1125(a).

75.     Defendant's willful and callous misconduct makes this an exceptional case, entitling Plaintiff to have any monetary remedies increased, up to three times such amount, and to recover its attorneys' fees under 15 U.S.C. § 1117.

76.     By reason of Defendant's acts alleged herein, Plaintiff has suffered and, unless Defendant's conduct is restrained, will continue to suffer serious and irreparable harm for which there is no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief against Defendant and after trial, to recover any damages proven to have been caused, or any profits of Defendant that have been earned unjustly, by reason of Defendant's acts of infringement.

## COUNT 3: VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT AS TO LIV® TRADEMARKS
## (15 U.S.C. § 1125(d)

77.     Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

78.     This claim is brought under 15 U.S.C. § 1125(d).

79.     Defendant controls, owns, and uses its Domain Name and Social Media Handles consisting of the **LIV**® Trademarks, each of which is likely to cause confusion, mistake, or deception with regard to the origin of said goods/services and to confuse, mislead, and deceive members of the public into believing that Plaintiff has allowed, sponsored, approved, or licensed Defendant to provide the same goods/services, or in some way Defendant is connected to or affiliated with Plaintiff, when they are not.

80.     Defendant had a bad faith intent to profit from Plaintiff's **LIV**® Trademarks.

81.     Defendant's acts constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

82.     By reason of Defendant's acts alleged herein, Plaintiff has suffered and, unless Defendant's conduct is restrained, will continue to suffer serious and irreparable harm for which there is no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief against Defendant and after trial, to recover any damages proven to have been caused, or any profits of Defendant that have been earned unjustly, by reason of Defendant's acts of infringement.

83.     By reason of the foregoing, Plaintiff is entitled to a transfer of Defendant's Domain Name and to an award of statutory damages of $100,000 per Domain Name. Defendant's willful misconduct makes this an exceptional case, entitling Plaintiff to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT 4: CANCELLATION OF TRADEMARK APPLICATION

84.    Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

85.    Plaintiff is the owner of the **LIV®** Trademarks, which have been used in U.S. commerce since at least 2008 in connection with a variety of goods and services including bar, nightclub, and entertainment services.

86.    Defendant is the applicant for U.S. Trademark Application Serial No. 99165459, filed on May 1, 2025, for the mark "LIV SOCIAL" in connection with night clubs and arranging and conducting nightclub parties (the "Challenged Application").

87.    Plaintiff's **LIV®** Trademarks predate the filing date of the Challenged Application and Defendant's first claimed use of the mark.

88.    Defendant's "LIV SOCIAL" mark is confusingly similar to Plaintiff's **LIV®** Trademarks in appearance and overall commercial impression, and is used for related goods and services, such that consumers are likely to be confused, mistaken, or deceived into believing that Defendant's goods and services are connected to or affiliated with Plaintiff in some way, when they are not.

89.    Defendant's registration and/or continued pursuit of the Challenged Application will cause injury and damage to Plaintiff's prior rights and the goodwill associated with the **LIV®** Trademarks.

90.    Pursuant to 15 U.S.C. § 1064, Plaintiff is entitled to cancellation of U.S. Trademark Application Serial No. 99165459 because of the likelihood of confusion under 15 U.S.C. § 1052(d).

## COUNT 5: TEXAS COMMON LAW TRADEMARK INFRINGEMENT

91.    Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55

as if fully set forth herein.

92.     Plaintiff owns valid and enforceable common law trademark rights in the **LIV®** Trademarks, which have been continuously used in commerce in Texas in connection with bar, nightclub, and entertainment services.

93.     Plaintiff, by and through its Related Companies, has run ads with the **LIV®** Trademarks in Texas and regularly distributes correspondence to its mailing lists, which include individuals and entities in Texas.

94.     The **LIV®** Trademarks have acquired distinctiveness and are recognized by consumers in Texas and throughout the United States in connection with Plaintiff's goods and services.

95.     Defendant, without Plaintiff's authorization or consent, has used and continues to use a confusingly similar mark in commerce in connection with similar or related goods/services.

96.     Defendant's use of the **LIV®** Trademarks in its trade names, trademarks, corporate names, SOCIAL LIV Names, Social Media Handles, Social Media Content, Infringing Logo, and Domain Name is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendant's products/services.

97.     Defendant's acts were willful and intentional and were committed with knowledge of Plaintiff's rights in the **LIV®** Trademarks.

98.     As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer irreparable harm, loss of goodwill, and economic damages in an amount to be proven at trial.

99.     Plaintiff is entitled to injunctive relief, damages, an accounting of profits, attorneys' fees, and any other relief that the Court deems just and proper.

## COUNT 6: TEXAS COMMON LAW UNFAIR COMPETITION
## (PASSING OFF/PALMING OFF)

100.    Plaintiff hereby incorporates the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

101.    Defendant has knowingly and intentionally engaged in unfair competition by passing off its goods/services as those of Plaintiff, or by misleading the public into believing that there is an affiliation, sponsorship, or connection with Plaintiff.

102.    Defendant's conduct includes the unauthorized use of the **LIV®** Trademarks in its trade names, trademarks, corporate names, SOCIAL LIV Names, Social Media Handles, Social Media Content, Infringing Logo, and Domain Name in a manner likely to confuse or deceive the public.

103.    Defendant's actions were willful and undertaken with the intent to capitalize on Plaintiff's reputation, goodwill, and established customer base.

104.    As a result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable harm and damages including loss of customers, harm to reputation, and lost profits.

105.    Plaintiff is entitled to injunctive relief, damages, an accounting of profits, attorneys' fees, and any other relief that the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JS IP LLC respectfully prays for the following relief against Defendant:

(a) An order declaring that Defendant's unauthorized conduct violates the Lanham Act, 15 U.S.C. §§1114, 1125(a), and 1125(d);

(b) An order requiring Defendant to provide an inventory list of all domain names and social media accounts in its possession, custody, and/or control, consisting of any of the **LIV®** Trademarks;

(c) An order permanently enjoining and restraining Defendant and those in active concert and participation with Defendant from:

    1. Further infringing and/or making any use of any of the **LIV®** Trademarks, and using, registering, and renewing Defendant's Domain Name, SOCIAL LIV Names, Infringing Logo, any corresponding trademarks, and/or any domain name or trademark confusingly similar thereto to advertise, promote, display, or sell any good/service;

    2. Making any use of Defendant's SOCIAL LIV Names, Domain Name, Infringing Logo, Social Media Handles, Social Media Content, or any domain name, trademarks, corporate names, trade names, or designations consisting of, in whole or in part, any of the **LIV®** Trademarks, the term "LIV," and/or any domain name, trademark, corporate name, trade name, or designation confusingly similar to the **LIV®** Trademarks;

    3. Registering, renewing, purchasing, and/or acquiring any trademarks, domain names, trade names, corporate names, and/or designations, consisting of, in whole or in part, any of the **LIV®** Trademarks, the term "LIV," or any domain name, trademark, corporate name, trade name, or designation confusingly similar thereto;

    4. Representing or suggesting to any third party that Defendant is affiliated with, sponsored by, licensed by, or otherwise connected with Plaintiff and/or the **LIV®** Trademarks; and

    5. Otherwise unfairly competing with Plaintiff;

(d) An order cancelling U.S. Trademark Application No. 99165459;

(e) An order compelling Defendant to transfer registration of the Defendant's SOCIAL LIV Names, Domain Name, Social Media Handles, and/or any other trademarks, corporate names, trade names, and/or designations consisting of, in whole or in part, any of the **LIV®** Trademarks, the term "LIV," and/or any domain name, social media account, trademark, corporate name, trade name, or designation confusingly similar thereto;

(f) An order compelling Defendant to remove all signs, remove all social media content, and recall all copies of print media, press releases, promotions, or advertisements in Defendant's control bearing the **LIV®** Trademarks, the Defendant's domain name, and all related goods/services and/or materials, pursuant to 15 U.S.C. § 1118;

(g) An order directing any other relief that the Court may deem appropriate to prevent the public from deriving any erroneous impression that any goods/services offered by Defendant are authorized by Plaintiff or are in any way related to Plaintiff or Plaintiff's goods/services; and

(h) An order directing an accounting and judgment be rendered against Defendant for:

1. An award of profits received by Defendant from its misuse of the **LIV®** Trademarks as provided for in 15 U.S.C. § 1117;

2. All profits received by Defendant and all damages sustained by Plaintiff on account of Defendant's false suggestion or connection with Plaintiff through the use of the **LIV®** Trademarks, SOCIAL LIV Names, Defendant's Domain Name, Social Media Handles, and/or Social Media Content;

3. An award of damages to Plaintiff for Defendant's wrongful conduct, including treble damages for Defendant's intentional and willful conduct pursuant to 15 U.S.C. § 1117;

4. An award to Plaintiff for costs, including reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1114;

5. An award of punitive damages in a sum to be determined at trial on the basis of Defendant's deliberate and intentional infringement;

6. All remedies available to Plaintiff under Texas common law for Defendant's trademark infringement and unfair competition; and

7. Any other relief that the Court finds warranted and just.

## <u>JURY TRIAL DEMAND</u>

Plaintiff respectfully demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated:  October 17, 2025

Respectfully submitted,

*/s/ J. Austin Franklin*
Nicholas S. Davis
Texas Bar No. 24101678
nick.davis@kellyhart.com
J. Austin Franklin
Texas Bar No. 24075853
austin.franklin@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Janet C. Moreira, Esq.*
Florida Bar No. 0597090
Amanda Suarez, Esq.*
Florida Bar No. 1030808
**CALDERA LAW PLLC**
7293 NW 2nd Avenue
Miami, FL 33150
Telephone: (786) 321-3811
janet@caldera.law
amanda@caldera.law
eservice@caldera.law

*\* pro hac vice forthcoming*

*Attorneys for Plaintiff*